IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**ROBERT JEFFREY OSTERRIEDER**,   )
                                                             )
        Plaintiff,   )
                                                             )
    v.   )   2:12cv1155
                                                              )   **Electronic Filing**
**MICHAEL J. ASTRUE**,   )
Commissioner of Social Security,   )
                                                             )
        Defendant.   )

MEMORANDUM OPINION

September 20, 2013

**I.     INTRODUCTION**

Plaintiff. Robert Jeffrey Osterrieder ("Plaintiff" or "Osterrieder") initiated this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the decision of the Commissioner of Social Security, Michael J. Astrue (the "Commissioner" or "Astrue") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").  See 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff protectively filed an application for DIB on May 19, 2009, and an application for SSI on July 26, 2010. R. 153-163.  Plaintiff alleged disability from February 1, 2008, due to bipolar disorder, anxiety, depression, migraines, high blood pressure, a heart murmur, plantar fasciitis, panic attacks and the inability to sleep. R. 188.  The applications were initially denied on January 11, 2011, and Plaintiff timely requested a hearing.  R. 82-83, 103.

A hearing was held on June 27, 2011, before Administrative Law Judge John Kooser (the "ALJ"), and a Vocational Expert ("VE") and Plaintiff, who was represented by counsel, appeared and gave testimony. R. 12-27. The ALJ issued a written decision on July 15, 2011, finding that Plaintiff was not disabled under the Act because he could perform a range of

unskilled, medium work, including his past relevant work. R. 19-24. Plaintiff timely requested a review of the ALJ's decision to the Appeals Council, which was denied on June 12, 2012, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C. § 405. R. 1-3. Plaintiff subsequently filed his appeal with this Court.

## II. STATEMENT OF THE CASE

Plaintiff was twenty-two (22) years old on the date of the ALJ's decision, making him a younger person under the regulations. R. 35. See 20 C.F.R. §§ 404.1563(c) & 416.963(c). Plaintiff completed the eleventh grade, quit high school two (2) months prior to the end of his senior year, and as of the date of the hearing he had not passed the GED exam. R. 38, 58. Plaintiff had earnings from 2006 through 2010, and had twelve (12) different places of employment over that time period. R. 166-170. Plaintiff earned more than $3,000.00 at only four (4) of those employers: (1) Baierl Chevrolet, Inc. in 2007 & 2008; (2) New Wave Car Wash in 2007; (3) Team Rahal of Pittsburgh, Inc. in 2008; and (4) First Commonwealth Bank in 2009 and 2010. R. 167-168.

On an agency form completed in connection with his applications, Plaintiff indicated that he stopped working on March 31, 2010. R. 188. Plaintiff testified that he was an amateur boxer and the gym offered him a job, but he needed a college education. R. 35. The gym told plaintiff that they would hire him part-time while he attended school. R. 42. The gym offered Plaintiff a $1,000 scholarship to attend school, and Plaintiff testified that he intended to attend the community college and study psychology. R. 36.

Plaintiff and his manager and trainer were planning to have Plaintiff turn professional in the next year. R. 36. Plaintiff reported that "[i]n about 20, 25 more fights I could sign a contract to turn professional." R. 48. Plaintiff testified that during that time he was "pretty much just

working on training to get ready for that fight." R. 48. Plaintiff also testified that he worked as an assistant trainer at the gym. R. 36. Plaintiff went to the gym every day except Sundays and Fridays and spent 6.5 to 7.0 hours training. R. 47-48.

Plaintiff drove to the gym, to his parents' house, or to go shopping, but he reported having anxiety and difficulty concentrating behind the wheel. R. 37-38. During an outing to a baseball game with a group of fellow therapy patients, Plaintiff testified that he had a panic attack. R. 43. Plaintiff was able to attend the game but indicated that he just remembers sitting there and "trying to calm myself down for two and a half hours". R. 44. Plaintiff feels a different type of anxiety when boxing. R. 50. Plaintiff described it as an anxiety that motivates him, much different than the anxiety he feels when walking "into a Wal-Mart," which is almost "debilitating." *Id.*

From September 2006 to April 2008, Plaintiff was treated by a psychiatrist, Suzanne Lucot, M.D. ("Dr. Lucot"). R. 234-237. Dr. Lucot diagnosed Plaintiff with anxiety, bipolar disorder, and social disorder, and assessed Plaintiff with an initial Global Assessment of Functioning ("GAF")[1] scale score of 50, which indicates serious symptoms, and subsequent GAF scores of 55, 60 and 65 which scores indicate moderate to mild functional limitations. R. 233-291.

---

[1] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning". *Id.*

After Plaintiff stole a car in April of 2008, Plaintiff's mother referred him to Jody Glance. M.D. for a psychiatric evaluation. R. 214. Plaintiff told Dr. Glance that he had some feelings of depression but mostly he felt anxious. *Id.* Dr. Glance assessed Plaintiff as follows:

> [Plaintiff has a] long history of anxiety, recently diagnosed with bipolar d/o but not endorsing any current or previous symptoms of mania. It is more likely that [Plaintiff] has a combination GAD depression and ADHD given his presentation and past history . . . He does not show any evidence of current suicidality/lethality and . . .is looking forward to getting back into therapy.

R. 215. Dr. Glance referred Plaintiff to a partial therapy program at Mercy Hospital. *Id.*

Plaintiff was treated at the Irene Stacy Community Mental Health Center from February 2009 until June 2010, by psychiatrists Randon Simmons, M.D., and Grace McGorrian ("Dr. Simmons" and "Dr. McGorrian"). R. 306-339. Plaintiff's initial psychiatric evaluation by Dr. Simmons in February of 2009 revealed pressured speech, clear anxiety, average intelligence, intact judgment and insight, and passive suicidal ideation. R. 317. Dr. Simmons also noted that Plaintiff "complicated the picture by self-administering steroids" for body-building purposes[2]. R. 316. During his period of treatment at Irene Stacy, Plaintiff also admitted to periods of heavy drinking. R. 326.

Plaintiff was admitted to Western Pennsylvania Hospital, Forbes Campus, in March 2009 for depression, following an overdose of Klonopin. R. 511-512 (Tr. 511-12). Plaintiff was diagnosed with major depressive disorder, GAD, and possible attention deficit disorder

---

[2] Plaintiff also told Dr. McGorrian of his cycles of steroid abuse using testosterone and other anabolic steroids. R. 313.

4

("ADD"). R. 512. Plaintiff indicated that he had been using anabolic steroids for four weeks, and since stopping his mood had worsened. *Id*. After a regimen of medication, both mood stabilizing and anti-anxiety, Plaintiff's condition showed marked improvement.[3] R. 514.

Suzanne Houk, Ph.D. ("Dr. Houk"), evaluated Plaintiff on December 17, 2010, at the request of the Commissioner. Dr. Houk diagnosis included bipolar disorder not otherwise specified, GAD, social phobia, and history of alcohol abuse. R.486. Dr. Houk also opined that Plaintiff had a moderate to marked restriction in the ability to understand, remember, and carry out short, simple, instructions, and make judgments on simple work-related decisions; a marked to extreme restriction in the ability to understand, remember, and carry out detailed instructions; and a marked restriction in the ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to both changes and work pressures in a normal work setting. R. 487. Further, Dr. Houk found that alcohol/substance abuse did not contribute the assessed limitations as Plaintiff had been abstinent. R. 488.

Jan Melcher, Ph.D. ("Dr. Melcher"), a state agency psychological expert, reviewed Plaintiff's file in January of 2011, and opined that he could meet the basic demands of competitive work on a sustained basis. R. 494. On a Psychiatric Review Technique form, Dr. Melcher assessed Plaintiff's impairments in light of the requirements of Listings 12.02, 12.04, 12.06, 12.08, and 12.09, and opined that Plaintiff's impairments caused no restriction in his daily activities, moderate limitations in maintaining social functioning and concentration,

---

[3] Plaintiff's GAF score improved from 20 on admission to 65 on discharge, his mental status examination yielded normal findings, and he was free of significant depression. R. 514.

persistence, or pace, and no episodes of decompensation of extended duration. R. 505. Moreover, Dr. Melcher found that Dr. Houk's assessments were based on Plaintiff's subjective reports and were inconsistent with the totality of the evidence. R. 494.

In June of 2011, Plaintiff was evaluated by Robert Eisler, M.D. ("Dr. Eisler"). Dr. Eisler's diagnosis included bipolar disorder, GAD, TBI, and drug-alcohol dependency, and issued a poor prognosis. R. 541. Dr. Eisler further noted a GAF of 20, and indicated that Plaintiff could not be gainfully employed for at least a year. *Id.*

The ALJ found that Plaintiff had the following severe impairments: GAD, social phobia, intermittent explosive disorder, alcohol dependence in remission, bipolar disorder, ADHD, shoulder sprain, heart murmur, and degenerative disc disease. R. 17. He found, however, that Plaintiff's severe impairments did not meet or equal any impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1. R. 18-19. The ALJ considered the functional limitations resulting from Plaintiff's impairments and found, in pertinent part, that he retained the residual functional capacity (RFC) to perform medium work but was limited to simple, routine, repetitive tasks performed in a low-stress environment, which was defined as one involving no complex decision making, very infrequent, unexpected workplace changes, and no high volume productivity requirements; and was further limited to no more than occasional contact with supervisors; very infrequent, superficial contact with co-workers; and no contact with the public. R. 19. Based upon Plaintiff's RFC for unskilled, medium work, and the testimony of the VE, the ALJ found that Plaintiff was capable of performing his past relevant work as a car dealer. R. 22-23. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or

her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

IV. **DISCUSSION**

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found

disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505.

I. ALJ's Disregard of Physician Opinions

Plaintiff initially contends that the ALJ erred in failing to give proper weight to his treating and examining physicians. Specifically, Plaintiff directs this Court to the following:

- In a Questionnaire, Dr. Simmons, Plaintiff's treating psychiatrist at the Irene Stacy Community mental Health Center, indicated that Plaintiff would not be able to obtain and sustain full-time employment due to his severe social anxiety that limits his ability to go places and do things. R. 528.

- A consultative evaluation by Dr. Suzanne Houk, a psychologist, indicated that Plaintiff had marked impairment in his ability to interact appropriately with the public, supervisors, or co-workers, and would not respond appropriately to changes in a routine work setting. R. 487.

- A psychiatric evaluation completed by Robert L. Eisler, M.D. indicated that Plaintiff had "poor" to "no" ability to follow work rules, use judgment, interact with others and would be unable to be gainfully employed for a year or more. He also indicated that Plaintiff's GAF was 20. R. 541-543.

Generally, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). It is the ALJ, however, not the treating or examining physicians or State agency consultants that must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although the opinions of treating and examining physicians often deserve more weight than the opinions of doctors who review records, the Third Circuit clearly holds that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) *see also* 20 C.F.R. § 404.1527(d)(1)–(2). State agent opinions also merit significant consideration. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are

experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

An ALJ, however, may not simply "ignore the opinion of a competent, informed, treating physician." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). Further, when making a residual functional capacity determination, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). The treating physician's opinion is entitled to controlling weight if the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527(d)(2). In making a RFC determination, then, the ALJ must consider all evidence before him, and although the ALJ may weigh credibility, he must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited, as well as indicate which evidence he rejects and his reason for discounting such evidence. *See* 20 C.F.R. § 404.1527(f)(2)(ii); *see also Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

The ALJ's RFC assessment was thorough, as he examined the medical evidence spanning several years and explained his decision to give certain medical evidence more weight than other such evidence. R. 19-22. The Court finds that the ALJ gave proper weight to the medical evidence in determining Plaintiff's RFC.

The ALJ recognized that Dr. Simmons was a treating psychiatrist, but found that his opinion was not supported by either the doctor's treatment notes or by Plaintiff's testimony with regard to his daily activities. The ALJ specifically pointed to Plaintiff's "wide variety of

activities," including competing in amateur boxing matches, training at the gym almost forty (40) hours per week, attending community class, and volunteering with teenagers at his boxing gym. R. 22. The ALJ explained that "these activities are incompatible with the severe restrictions that Dr. Simmons outlined in his opinion". *Id.* Moreover, in his most recent objective findings, Dr. Simmons indicated that Plaintiff was overall doing well with his medication and treatment . R. 522. The ALJ also cited the fact that Plaintiff had not required any emergency treatment or hospitalization since he stopped abusing alcohol and steroids. For these same reasons, the ALJ gave little weight to the opinions of Drs. Houk and Eisler.

The ALJ was also entitled to give substantial weight to the opinion of Dr. Melcher, the state agency psychological expert. Dr. Melcher opined that Plaintiff's impairments did not meet or equal the requirements of any listing and that Plaintiff was able to meet the basic demands of competitive work on a sustained basis. R. 494. In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Plaintiff's treating physicians were not controlling. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. Pa. 1991).

II. Evaluation of Plaintiff's Impairments

Plaintiff contends that the ALJ erred in his finding that Plaintiff did not meet an impairment listed in the Listings of Impairments in Appendix 1, Subpart P, Regulation No. 4. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Hernandez v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 230, 234 (3d Cir. N.J. 2006) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). In order to qualify as per se disabled by showing that his unlisted impairment or combination of impairments is "equivalent" to a Listed Impairment, Plaintiff "must present medical findings equal in severity" to the criteria contained within the relevant Listing. *Sullivan v. Zebley*, 493 U.S. at 531.

12

Regarding Step 3 determinations, the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F. 3d 501, 505 (3d Cir. 2004). *See Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. App'x 468, 470 – 71 (3d Cir. 2005) (an ALJ satisfies his burden "by clearly evaluating the available medical evidence in the record and then setting forth the evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing"). An ALJ's discussion – when read as a whole – is supported by substantial evidence when it reveals that the ALJ considered the appropriate facts when deciding that a claimant did not meet any specific disability listings. *Id.*

As stated above, the ALJ, after a comprehensive review of the evidence of record, concluded that Plaintiff had only a mild restriction in his daily activities based on his ability to pursue a boxing career, by working out at a gym five days a week, attending weekly life classes at his transitional housing facility, taking courses at the community college, as well as maintaining his weekly appointments at Irene Stacy with his therapist, his caseworker, and his therapy group. The ALJ provided sufficient explanation for his conclusion that Plaintiff did not have a severe impairment. Moreover, there is no particular language or format that an ALJ must use in his or her analysis as long as there is "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). In this case, the ALJ's opinion not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence. The ALJ determination at step 3, therefore, is supported by substantial evidence.

III.    <u>Testimony of the VE</u>

Plaintiff argues that the ALJ improperly disregarded the VE's testimony and relied upon an incomplete hypothetical question. Specifically, Plaintiff contends that the ALJ disregarded the VE's testimony that no suitable work existed for Plaintiff if his claims of severe memory

deficits, problems with concentration/attention, being off task, missing work, and marked impairments were factors in the hypothetical questions. In this instance, the ALJ could properly disregard Plaintiff's alleged limitations as they were unsupported in the record.

At the hearing, the VE testified that Plaintiff's past relevant work as a cashier/checker was semi-skilled, light work; his car detailer and lot attendant job was unskilled, medium work; his sales associate job was unskilled, light work; and his bank teller job was skilled, light work. R. 69. After considering a hypothetical regarding an individual with Plaintiff's vocational factors who had the functional limitations contained in the ALJ's RFC finding, the VE testified that such individual could perform Plaintiff's past relevant work as a car detailer. R. 70.

Hypothetical questions to vocational experts must accurately portray the claimant's impairments and cannot constitute substantial evidence if the question omitted any impairments that are medically established by the evidence on record. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). ). In posing a hypothetical question to a vocational expert, "the ALJ must accurately convey . . . all of a claimant's credibly established limitations" as determined in the RFC. *Id.* If the hypothetical question does not include "medically undisputed evidence of specific impairments" in the record then "the [VE's] response is not considered substantial evidence." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

The hypothetical question(s) presented to the VE by the ALJ were supported by the medical evidence found credible by the ALJ. Moreover, the evidence regarding Plaintiff's daily activities does not support the limitations advocated by Plaintiff for inclusion in the hypotheticals.

A claimant who is capable of returning to his or her past relevant work is denied benefits at the fourth step of the process. *Barnhart v. Thomas*, 540 U.S. 20, 25-29 (2003). Moreover, by agency ruling a claimant will be found "not disabled" if he can perform the actual demands of

his past work, or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *See* SSR 82-61, Past Relevant Work – The Particular Job or the Occupation as Generally Performed. The disability inquiry, therefore, ends upon such a finding at step four. The Court find's substantial evidence in support of the ALJ's determination that Plaintiff was able to return to his past relevant work.

IV. Plaintiff's RFC

Plaintiff next argues that the ALJ's RFC assessment was not supported by substantial evidence. With respect to RFC assessments[4], ALJ's are not required to include every alleged limitation in their hypotheticals and RFC assessments; their responsibility is to "accurately convey" only "*credibly established limitations*" which "are medically supported and otherwise uncontroverted in the record." *Rutherford v. Barnhart*, 399 F. 3d 546, 554 (3d Cir. 2003). An RFC assessment is not a medical assessment, but an administrative finding reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2006); SSR 96-5p, 1996 SSR LEXIS 2. The responsibility of assessing a claimant's RFC rests with medical experts at the state agency level, with the ALJ at the administrative hearing level, or with the Appeals Council. *Id.* The ALJ is required to conduct an independent analysis of the relevant evidence and develop an appropriate RFC based upon that evidence. 20 C.F.R. §§ 404.1545, 416.945. It is the ALJ's exclusive duty, as fact finder, to make an RFC assessment. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see Richardson v. Perales*, 402 U.S. 389, 399 (1971)(recognizing that the duty to weigh the evidence rests with the trier of fact, not the reviewing court).

---

[4] A claimant's residual functional capacity is only assessed once. *Her v. Commissioner of Social Security,* 203 F.3d 388, 391-392 (6th Cir. 1999). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii). Therefore, the testimony elicited by a single hypothetical question may relate to both the fourth and fifth steps.

Here, there is no merit to Plaintiff's contention that the record fails to support the ALJ's RFC assessment. In support of his contention, Plaintiff again directs this Court to the opinions of Drs. Simmons, Houk and Eisler. This Court, however, has already found that the ALJ's evaluation of the medical evidence in this case was proper. There was more than adequate evidence in the record to allow the ALJ to give little or no weight to those opinions. Based upon the ALJ's thorough and detailed consideration of the record as a whole, the Court finds that the ALJ's RFC assessment is supported by substantial evidence of record.

V.  **CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment will be granted. Plaintiff's Motion for Summary Judgment will be denied. The decision of the ALJ is affirmed. An appropriate Order follows.

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:  Christine M. Nebel, Esquire
     Paul Kovac, AUSA

   (*Via CM/ECF Electronic Mail*)